1

2

3

4

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11   TANYA MARIE NICHOLL,              CASE NO. SACV 17-1485 SS

12                  Plaintiff,

13        v.

14   NANCY A. BERRYHILL, Acting        **MEMORANDUM DECISION AND ORDER**
     Commissioner of Social
15   Security,

16                  Defendant.

17

18                              **I.**

19                        **INTRODUCTION**

20

21        Tanya Marie Nicholl ("Plaintiff") brings this action, seeking

22   to overturn the decision of the Acting Commissioner of Social

23   Security (the "Commissioner" or "Agency") denying her application

24   for Disability Insurance Benefits.  The parties consented, pursuant

25   to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

26   United States Magistrate Judge.  (Dkt. Nos. 10, 12-13).  For the

27   reasons stated below, the Court AFFIRMS the Commissioner's

28   decision.

## II.

## PROCEDURAL HISTORY

On April 2, 2014, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act") alleging a disability onset date of May 24, 2012. (AR 76, 154-57). The Commissioner denied Plaintiff's application initially and upon reconsideration. (AR 76, 88, 89-99). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 19, 2015. (AR 36-65, 104-05). The ALJ issued an adverse decision on March 28, 2016, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that she can perform. (AR 23-31). On June 29, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-7). This action followed on August 29, 2017.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on August 11, 1973. (AR 154). She was forty-two (42) years old when she appeared before the ALJ on November 19, 2015. (AR 43). Plaintiff is divorced and lives with her mother. (AR 43-44). Plaintiff has a high-school education and attended a few years of college. (AR 44, 179). She previously worked as a claims examiner, billing typist, and audit clerk. (AR 179). She alleges disability due to severe anxiety attacks, severe panic attacks, depression, and mood disorder NOS. (AR 178).

## A. __Plaintiff's Statements And Testimony__

On June 4, 2014, Plaintiff submitted an Adult Function Report. (AR 189-97). She reported being unable to work because her anxiety gives her gastrointestinal problems and her medications cause drowsiness. (AR 189, 196). Plaintiff denied any problems with her ability to dress, bathe, or care for her hair. (AR 190). She is able to prepare her own meals and do housework. (AR 190-91). She sets an alarm to timely take her medications. (AR 191). Plaintiff goes outside three times a week and is able to drive and shop on her own. (AR 192). She socializes with friends and family. (AR 193). Plaintiff asserts that her impairments affect her ability to memorize, complete tasks, concentrate, and understand. (AR 194).

At the time of her hearing, Plaintiff was forty-two years old, divorced, and living with her mother. (AR 43-44). Plaintiff drove herself to the hearing. (AR 44). She testified that she is unable to work due to frequent panic and anxiety attacks, which can last for hours or up to two days. (AR 45, 49-50). She reported that even little things overwhelm her. (AR 47). Her panic attacks cause physical symptoms, including gastrointestinal pain, nausea, and dehydration. (AR 48). Plaintiff also reported depression, which affects her ability to concentrate. (AR 52). Plaintiff is unable to sleep without her medication. (AR 53). She denied any problems driving or being out in public. (AR 55). She frequently socializes with friends. (AR 58).

## B.    Treatment History

On May 24, 2012, Plaintiff presented to the emergency room, complaining of abdominal pain, nausea and vomiting resulting from stress and anxiety. (AR 335). During the course of the evaluation, Plaintiff's symptoms resolved, and she was discharged with instructions to follow-up with her primary care physician. (AR 336-37). The medical record contains no further treatments until 2014.

On March 29, 2014, Plaintiff presented to the emergency room for treatment of her anxiety symptoms. (AR 301). She described her symptoms as "knots in her stomach," but denied chest pain or shortness of breath. (AR 301). Plaintiff reported occasional suicidal thoughts. (AR 301). On March 30, Plaintiff was evaluated for behavioral health services after reporting worsening depression, anxiety, and insomnia. (AR 317). She was diagnosed with major depression, anxiety disorder, and chronic insomnia, and assigned a Global Assessment of Functioning ("GAF") score of 55.[1]

---

[1]    "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM-IV). According to DSM-IV, a GAF score between 51 and 60 "indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical

She responded well to medication and treatment, with reduction of her depression, improvement of her sleep, and elimination of her anxiety, and was discharged on April 1.  (AR 317).

In April 2014, Plaintiff began treating with the Behavioral Services Department of the Orange County Health Care Agency ("Orange County Behavioral Services").  (AR 429).  At the initial intake, she reported anxiety attacks, insomnia, depression, and a recent suicide attempt.  (AR 429-30).  Her current medications included Prozac, Seroquel, Hydroxyzine, and Trazodone.  (AR 430). She presented anxious and depressed.  (AR 433).  Plaintiff acknowledged an opioid addiction that she was taking for back pain ("[Plaintiff] reported she was addicted to Norcos that she was taking for back pain and then was rx [sic] Methocarbarnol for opiate withdrawals").  (AR 433).  A mental status examination found agitated motor activity, circumstantial thought processes, an anxious mood and poor insight, judgment and impulse control.  (AR 432).  On April 29, Plaintiff reported decreased concentration and morning nausea.  (AR 428).  However, no significant mental status abnormalities or functional deficiencies were noted.  (AR 428). Plaintiff was diagnosed with major depressive disorder and opioid dependency and assigned a GAF score of 50.[2]  (AR 428).  On May 27, Plaintiff reported being stable on her medications.  (AR 427).  A

---

impairments to create a disability), they may be a useful measurement."  Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

[2]    A GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning."  DSM-IV 34.

mental status examination was largely normal and unremarkable. (AR 425). Plaintiff was diagnosed with major depressive disorder and opioid dependence and assigned a GAF score of 55. (AR 424). She was admonished to remain medication compliant. (AR 424).

On June 27, 2014 Plaintiff reported continuing anxiety but improved depression symptoms. (AR 423). On examination, Ralph Lissaur, M.D., noted monotone speech, anxious mood, restricted affect, and poor concentration, attention, insight and judgment. (AR 423). Dr. Lissaur diagnosed major depressive disorder and opioid dependence and assigned a GAF score of 46. (AR 423). He opined that Plaintiff cannot consistently follow instructions, complete tasks, keep appointments, follow a schedule, or conduct relationships in line with societal expectations; cannot independently manage medications; requires supervision, prompting, reminders, or redirection; and is unable to leave her house independently, follow through on treatment goals, or independently manage activities of daily living. (AR 423). Dr. Lissaur concluded that Plaintiff has trouble completing simple tasks or following verbal or written directions without undue interruptions and distractions, and on a scheduled, routine, consistent, sustained basis as required in the workplace. (AR 423).

On July 30, 2014, Plaintiff reported being compliant with her medications. (AR 422). Other than an anxious mood and poor concentration, insight, and judgment, a mental status examination was unremarkable. (AR 422). Plaintiff's Prozac dosage was increased. (AR 422). On September 11, Plaintiff reported daily

anxiety attacks and occasional depression. (AR 411). She was medication compliant and denied any side effects. (AR 411). Other than a depressed mood, restricted affect, and fair insight and judgment, a mental status examination was normal. (AR 411). Jerry Ngo, M.D., diagnosed major depressive disorder and opioid dependence and assigned a GAF score of 50. (AR 411). On October 9, Plaintiff acknowledged that her "nausea has been both less frequent and less intense." (AR 409). She reported walking and exercising again." (AR 409). Dr. Ngo added an anxiety NOS diagnosis. (AR 409). On November 6, Plaintiff reported that Prozac was helping with her depression, but that her mood could still be improved. (AR 407). On examination, Plaintiff's affect was restricted and her insight and judgment were fair. (AR 407). Otherwise, the mental status examination was unremarkable. (AR 407). On December 4, Plaintiff reported continuing anxiety, including rapid breathing and occasional diarrhea. (AR 405). She acknowledged that "Prozac has helped with depression." (AR 405). On examination, her mood was "more depressed," affect was restricted and dysphoric, and her insight and judgment were fair. (AR 405). Otherwise, Plaintiff's appearance, speech, thought process, orientation, and concentration were all normal. (AR 405).

On January 15, 2015, Plaintiff reported that until she recently ran out of medications, her anxiety symptoms were limited to three times over the previous month. (AR 403). On examination, Plaintiff's appearance, speech, mood, thought process, concentration, and orientation were normal. (AR 403). Her affect was restricted and dysphoric and her insight and judgment were

fair. (AR 403). Dr. Ngo diagnosed major depressive disorder, anxiety NOS, and opioid dependence, in full remission. (AR 403). Dr. Ngo continued the Prozac, Seroquel, and Xanax dosages and increased the Gabapentin dosage. (AR 403). He advised Plaintiff to exercise regularly and referred her to therapy. (AR 403).

On September 18, 2015, Plaintiff sought emergency care for anxiety and abdominal pain after she ran out of her medications. (AR 447). She was restarted on her medications, with effective resolution of her symptoms, and discharged in good condition. (AR 446, 450).

On October 28, 2015, Dr. Ngo completed a mental impairment questionnaire. (AR 473-77). He asserted that Plaintiff's anxiety symptoms include depressed mood, persistent anxiety, difficulty thinking or concentrating, recurrent panic attacks, anhedonia, appetite disturbances, decreased energy, and insomnia. (AR 474). Dr. Ngo opined that Plaintiff has marked limitations in her ability to carry out simple, one-to-two step instructions, and complete a workday without interruptions from psychological symptoms; moderate-to-marked limitations in her ability to maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual, work in coordination with or near others without being distracted by them, and perform at a consistent pace without rest periods of unreasonable length or frequency; and moderate limitations in her ability to interact appropriately with the public, maintain socially appropriate behavior, and respond appropriately to workplace changes. (AR

476). Dr. Ngo concluded that Plaintiff would likely miss more than three days a month due to her impairments. (AR 477).

## C.    <u>State Agency Consultants</u>

On July 24, 2014, Eugene Campbell, Ph.D., a State agency consultant, reviewed the medical record and concluded that Plaintiff's anxiety and depression are severe impairments. (AR 71). Dr. Campbell opined that Plaintiff has a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (AR 71). He further opined that Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 73). Dr. Campbell concluded that Plaintiff can learn and remember basic work instructions and tasks of one-to-two steps; follow a schedule, make decisions, and complete basic work tasks on a consistent basis; work with and around others; and adapt to changes and handle the normal stressor of full-time employment. (AR 73). On November 5, 2014, Barbara Moura, Ph.D., another State agency consultant, concurred with Dr. Campbell's assessment. (AR 83-85).

### IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids").  Osenbrock v. Apfel,

11

240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 31). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 24, 2012, the alleged onset date. (AR 25). At step two, the ALJ found that Plaintiff's anxiety and major depressive disorder are severe impairments.[3] (AR 25). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 25-26).

The ALJ then assessed Plaintiff's RFC and concluded she can perform a full range of work at all exertional levels but with the following nonexertional limitations: "[Plaintiff] is limited to the performance of simple[,] routine and repetitive tasks, but

---

[3] The ALJ also considered Plaintiff's obesity and found that it has no more than a minimal effect on her ability to perform work functions. (AR 25).

would be able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence; and should have no more than occasional interaction with coworkers, supervisors and the general public." (AR 26). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 28-29). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner, packer, and laundry worker. (AR 29-30). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined by the Act, from May 24, 2012, through the date of the decision. (AR 30-31).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v.

13

<u>Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  (<u>Id.</u>).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff raises three claims for relief: (1) the ALJ improperly rejected the medical opinion evidence; (2) the ALJ failed to properly consider Plaintiff's subjective testimony; and (3) the ALJ presented a flawed hypothetical to the VE.  (Dkt. No. 16 at 8-19).  The Court addresses each claim in turn.

**A.**    <u>**The ALJ Properly Weighed The Treating Doctors' Opinions**</u>

Plaintiff asserts that the ALJ erred in rejecting the functional assessments of her treating psychiatrists, Drs. Ngo and Lissauer.  (Dkt. No. 16 at 8-14).

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); accord Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.' " Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels v.

15

Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.; see also Reddick, 157 F.3d at 725 (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831 (emphasis in original).

Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 1. Dr. Ngo

In October 2015, Dr. Ngo completed a mental impairment questionnaire. (AR 473-77). As part of the questionnaire, Dr. Ngo estimated Plaintiff's ability to perform certain mental activities in a sustained workday environment. (AR 476). The degrees of limitation included "marked," which the questionnaire defined as "constant – more than 2/3 of an 8-hr. workday," and "moderate-to-marked," which was defined as "frequent – 1/3 [to] 2/3 of an 8-hr. workday." (AR 476). Dr. Ngo opined that Plaintiff has "marked" limitations in her ability to carry out simple, one-to-two step instructions, and to complete a workday without interruptions from psychological symptoms; and "moderate-to-marked" limitations in her ability to maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual, work in coordination with or near others without being distracted by them, and perform at a consistent pace without rest periods of unreasonable length or frequency. (AR 476). Dr. Ngo also concluded that Plaintiff would likely miss more than three days a month due to her impairments. (AR 477).

The ALJ gave Dr. Ngo's assessment "little weight" because the "severe restrictions . . . exceed any difficulties supported by the evidence as a whole," including "mental status examinations and [Plaintiff's] demonstrated abilities during the period under consideration." (AR 28). Because Dr. Ngo's opinion was contradicted by the State agency consultants' opinions, the Court reviews the ALJ's rejection of Dr. Ngo's opinion for "specific and legitimate reasons that are supported by substantial evidence." Bayliss, 427 F.3d at 1216; see Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for specific and legitimate reasons that are supported by substantial evidence in the record.") (citation omitted). The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Ngo's opinion.

Dr. Ngo's largely "check-off" opinion was not supported by objective or clinical evidence. Medical opinions that are inadequately explained or lack supporting clinical or laboratory findings are entitled to less weight. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected "check-off reports that did not contain any explanation of the bases of their conclusions"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's opinion where it was "conclusory and unsubstantiated by relevant medical documentation"); see also 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical

18

opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Mental status examinations by Dr. Ngo and other professionals associated with Orange County Behavioral Services did not reflect the extreme functional limitations assessed by Dr. Ngo. See Buck v. Berryhill, 869 F.3d 1040, 1050 (9th Cir. 2017) ("A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes."). At Plaintiff's initial intake, no significant status abnormalities or functional deficiencies were noted. (AR 428). In May 2014, a mental status examination was largely normal and unremarkable. (AR 425). In June 2014, Plaintiff reported continuing anxiety but improved depression symptoms. (AR 423). In July, other than an anxious mood and poor concentration, insight and judgment, a mental status examination was unremarkable. (AR 422). Similarly, in September, other than a depressed mood, restricted affect, and fair insight and judgment, a mental status examination was normal. (AR 411). In November and December, Plaintiff reported improved depression symptoms with Prozac. (AR 405, 407). In December, Plaintiff's appearance, speech, thought process, orientation, and concentration were all normal. (AR 405). Similarly, in January 2015, Plaintiff's appearance, speech, mood, thought process, concentration, and orientation were all normal. (AR 403).

Dr. Ngo diagnosed major depressive disorder, anxiety NOS, and opioid dependence, in full remission. (AR 403). However, the mere

19

existence of major depression and anxiety does not provide conclusive support for the extreme disabling limitations opined by Dr. Ngo. Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."). Even if a claimant receives a particular diagnosis, it does not necessarily follow that the claimant is disabled, because it is the claimant's symptoms and true limitations that generally determine whether she is disabled. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Dr. Ngo cites no clinical tests in support of his extreme limitations.

Plaintiff's depression and anxiety have resulted primarily in symptoms of nausea and stomach pain. (AR 28, 45, 48, 51, 189, 196, 301, 355, 405, 409, 447, 474). However, when Plaintiff is compliant with her medications, her symptoms are largely ameliorated. (AR 27-28, 317, 336-37, 403, 405, 407, 409, 422, 423, 427, 446-47, 450); see Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). Plaintiff consistently denied any side effects from her medications. (AR 403, 405, 407, 409, 411, 423).

Further, by Plaintiff's own admissions, her symptoms are not debilitating. (AR 27-28). In her statements and testimony, she

acknowledged preparing her own meals, doing housework, driving, shopping, joining her family on a cruise, zip-lining (AR 59) and socializing. (AR 54-58, 189, 191-94). Plaintiff's symptoms have not prevented her from volunteering annually at the Renaissance Pleasure Fair. (AR 57, 428, 468). She is able to watch television and read. (AR 553).

Plaintiff argues that psychiatric impairments are not readily amenable to clinical examinations and rigid diagnostic techniques. (Dkt. No. 16 at 10-11) (citing Medina v. California, 505 U.S. 437, 451 (1992) ("Our cases recognize that the subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations, because psychiatric diagnosis is to a large extent based on medical impressions drawn from subjective analysis and filtered through the experience of the diagnostician.") (citation and alterations omitted). Here, however, the ALJ gave Dr. Ngo's opinion little weight not only because the mental status examinations did not support Dr. Ngo's extreme limitations, but also because the disabling limitations were belied by Plaintiff's acknowledged activities of daily living.

Plaintiff also contends that her "ability to perform sporadic activities of daily living, almost entirely within her own home, are not inconsistent with the opinions from treating specialists regarding what limitations [Plaintiff] could have if placed in a competitive work environment 8 hours a day, 40 hours a week." (Dkt. No. 16 at 11) (citing Garrison, 759 F.3d at 1016) ("We have repeatedly warned that ALJs must be especially cautious in

21

concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). The ALJ, however, is not citing Plaintiff's activities of daily living for proof that she is capable of working. Rather, Plaintiff's acknowledged abilities to "engag[e] in activities including self-care, housework, errands (including driving and shopping in stores), and social and leisure activities" (AR 28) contradict Dr. Ngo's assessments of marked and moderate-to-marked limitations. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion).

Plaintiff asserts that the ALJ improperly "gave the greatest weight to opinions from nonexamining state agency psychologists." (Dkt. No. 16 at 12). However, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, at *3; see Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[R]eports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). In any event, the ALJ gave the State agency psychologists only "some" weight, finding that Plaintiff's subjective statements and recent treatment records

supported <u>greater</u> functional restrictions than those assessed by the State agency doctors. (AR 28).

Finally, Plaintiff argues that the ALJ erred by failing to explicitly consider the factors provided in 20 C.F.R. § 404.1527 to determine the weight to be given to a treating physician's opinion. (Dkt. No. 16 at 13-14) (citing <u>Trevizo</u>, 871 F.3d at 676). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." <u>Revels</u>, 874 F.3d at 654. However, "the ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c)." <u>Kelly v. Berryhill</u>, No. 16-17173, 2018 WL 2022575, at *3 (9th Cir. May 1, 2018); see <u>Harris v. Colvin</u>, 584 F. App'x 526, 528 (9th Cir. 2014) ("The agency was not required to specifically reference each factor listed in 20 C.F.R. § 404.1527(c).") (citing SSR 06-03p, at *5) ("Not every factor for weighing opinion evidence will apply in every case."). Here, the ALJ explicitly considered the supportability of Dr. Ngo's opinion and its consistency with the record. (AR 28). Moreover, the ALJ acknowledged that Plaintiff began treating with Orange County Behavioral Services in April 2014 and that she made multiple, periodic visits prior to Dr. Ngo's assessment in October 2015. (AR 27-28). Further, unlike in <u>Trevizo</u> where the ALJ's "outright rejection" of the treating physician's opinion constituted "reversible legal error," 871 F.3d at 676, here the ALJ rejected only the "severe restrictions reflected in the

23

opinion of Dr. Ngo." (AR 28). Indeed, Dr. Ngo's assessments that Plaintiff is moderately limited in her ability to interact appropriately with the public, maintain socially appropriate behavior, and respond appropriately to workplace changes are reflected in the RFC's restriction to simple, routine and repetitive tasks with no more than occasional interaction with coworkers, supervisors, and the general public. (Compare AR 476, with id. 26).

The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Ngo's opinion, and no remand is required.

**2. Dr. Lissaur**

In June 2014, Dr. Lissaur opined that Plaintiff cannot consistently follow instructions, complete tasks, keep appointments, follow a schedule, or conduct relationships in line with societal expectations; cannot independently manage medications; requires supervision, prompting, reminders, or redirection; and is unable to leave her house independently, follow through on treatment goals, or independently manage activities of daily living. (AR 423). Dr. Lissaur concluded that Plaintiff has trouble completing simple tasks or following verbal or written directions without undue interruptions and distractions, and on a scheduled, routine, consistent, sustained basis as required in the workplace. (AR 423).

The ALJ gave Dr. Lissaur's assessments "little weight" because they "are inconsistent with [Plaintiff's] mental status examinations and demonstrated abilities during the period under consideration." (AR 28). Because Dr. Lissaur's opinion was contradicted by the State agency consultants' opinions, the Court reviews the ALJ's rejection of Dr. Lissaur's opinion for "specific and legitimate reasons that are supported by substantial evidence." Bayliss, 427 F.3d at 1216; see Moore, 278 F.3d at 924. The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Lissaur's opinion.

First, the extreme limitations assessed in Dr. Lissaur's conclusory opinion are inconsistent with the evidence as a whole. See Crane, 76 F.3d at 253; Johnson, 60 F.3d at 1432; 20 C.F.R. § 416.927(c)(3). As discussed above, generally unremarkable mental status examinations by Dr. Lissaur and other professionals associated with Orange County Behavioral Services do not support the extreme functional limitations assessed by Dr. Lissaur. For example, Dr. Lissaur's opinion that Plaintiff is unable to follow instructions and concentrate on simple tasks is not supported by consistent findings on mental status examinations, which demonstrated that Plaintiff has normal speech, grooming, thought processes, concentration, orientation, memory, and judgment, with no delusions, hallucinations, or suicidal ideations. (Compare AR 423, with id. 403, 405, 425, 432, 461, 466-67, 470, 551). Indeed, as discussed above, when Plaintiff is compliant with her medications, her primary symptoms of nausea and stomach pain are

ameliorated.  See Warre, 439 F.3d at 1006.  While Dr. Lissaur diagnosed major depressive disorder and opioid disorder, the mere existence of major depression does not provide conclusive support for the extreme disabling limitations opined by Dr. Lissauer.  See Matthews, 10 F.3d at 680; Key, 754 F.2d at 1549; Rollins, 261 F.3d at 856.  Dr. Lissaur cites no clinical tests in support of his extreme limitations.

Second, Dr. Lissaur's opinion that Plaintiff is completely unable to engage in certain functions is inconsistent with Plaintiff's acknowledged activities of daily living.  See Morgan, 169 F.3d at 600-02.  For example, Dr. Lissaur's opinion that Plaintiff could not leave her house by herself or manage her activities of daily living was belied by Plaintiff's statements that she remained able to engage in a significant range of daily, social and leisure activities, including completing household chores, driving her car, visiting friends, shopping in stores, watching television, reading, and volunteering annually at the Renaissance Pleasure Fair.  (Compare AR 423, with id. 27-28, 54-58, 189, 191-94, 428, 468, 533).

The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Lissaur's opinion, and no remand is required.

**B.   The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear and Convincing**

Plaintiff testified that she is unable to work due to frequent panic and anxiety attacks, which can last hours or up to two days. (AR 45, 49-50).  She asserted that her panic attacks cause physical symptoms, including gastrointestinal pain, nausea, and dehydration.  (AR 48).  Plaintiff claims her depression affects her ability to concentrate.  (AR 52).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  Trevizo, 871 F.3d at 678.  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  Trevizo, 871 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the

claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

1997).    In  addition,  the  ALJ  may  consider  the  observations  of
treating and examining physicians regarding, among other matters,
the  functional  restrictions  caused  by  the  claimant's  symptoms.
Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137.  However,
it  is  improper  for  an  ALJ  to  reject  subjective  testimony  based
"solely" on its inconsistencies with the objective medical evidence
presented.    Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227
(9th Cir. 2009) (citation omitted).

    Further,  the  ALJ  must  make  a  credibility  determination  with
findings  that  are  "sufficiently  specific  to  permit  the  court  to
conclude  that  the  ALJ  did  not  arbitrarily  discredit  claimant's
testimony."    Tommasetti v. Astrue,  533 F.3d 1035, 1039 (9th Cir.
2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487,
493 (9th Cir. 2015) ("A finding that a claimant's testimony is not
credible must be sufficiently specific to allow a reviewing court
to  conclude  the  adjudicator  rejected  the  claimant's  testimony  on
permissible  grounds  and  did  not  arbitrarily  discredit  a  claimant's
testimony regarding pain.") (citation omitted).  Although an ALJ's
interpretation  of  a  claimant's  testimony  may  not  be  the  only
reasonable one, if it is supported by substantial evidence, "it is
not [the court's] role to second-guess it."  Rollins, 261 F.3d at
857.

    The ALJ found that Plaintiff's severe impairments cause some
limitations in her ability to perform work activity but do not
preclude all basic work activity, as Plaintiff alleged.  (AR 26-
28).  The ALJ provided specific, clear, and convincing reasons,

supported by evidence in the record, to find Plaintiff's complaints of disabling mental symptomology only partially credible. (AR 27-28). These reasons are sufficient to support the Commissioner's decision.

First, the ALJ found that Plaintiff's allegations of disabling mental symptoms are inconsistent with her activities of daily living, which indicate that "her symptoms do not prevent her from engaging in activities including self-care, housework, errands (including driving and shopping in stores), and social and leisure activities." (AR 28). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016; see Burrell, 775 F.3d at 1137 ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."). Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016. By Plaintiff's own admissions, her symptoms are not debilitating. (AR 27-28). In her statements and testimony, she acknowledged preparing her own meals, doing housework, driving, shopping, and socializing. (AR 54-58, 189, 191-94). Plaintiff's symptoms have not prevented her from volunteering annually at the Renaissance Pleasure Fair. (AR

428, 468).  She is able to watch television and read.  (AR 553).

Everyday activities "may be grounds for discrediting the claimant's

testimony to the extent that they contradict claims of a totally

debilitating impairment."  Molina v. Astrue, 674 F.3d 1104, 1113

(9th Cir. 2012).


Plaintiff contends that "[t]here can be a great distance

between a patient who responds to treatment and one who is able to

enter the workforce."  (Dkt. No. 16 at 17) (citation omitted).

However, the ALJ did not conclude from Plaintiff's subjective

statements and treatment records that she was capable of full-time

work.  Instead, the ALJ properly found that the treatment records

and subjective statements contradicted Plaintiff's allegations of

debilitating symptoms.  (AR 27-28).


Second, the ALJ properly concluded that "[Plaintiff's]

treatment records reflect mental stability through the period at

issue, with effective symptomatic mitigation with conservative

treatment (per [Plaintiff] reporting and clinical observation)."

(AR 28).  "Contradiction with the medical record is a sufficient

basis for rejecting the claimant's subjective testimony."

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th

Cir. 2008).  While inconsistencies with the objective medical

evidence cannot be the sole ground for rejecting a claimant's

subjective testimony, it is a factor that the ALJ may consider when

evaluating credibility.  Bray, 554 F.3d at 1227; Burch v. Barnhart,

400 F.3d 676, 681 (9th Cir. 2005); Rollins, 261 F.3d at 857; see

SSR 16-3p, at *5 ("objective medical evidence is a useful indicator

to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). As discussed above, throughout the relevant period, mental status examinations consistently indicated normal appearance, speech, thought process, orientation, and concentration. (AR 403, 405, 411, 423, 425, 428). In July 2014, other than an anxious mood and poor concentration, insight and judgment, a mental status examination was unremarkable. (AR 422). Similarly, in September, other than a depressed mood, restricted affect, and fair insight and judgment, a mental status examination was normal. (AR 411).

The ALJ found that Plaintiff responded well to conservative treatment and medications. (AR 27-28). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre, 439 F.3d at 1006. When Plaintiff is medicine compliant, her symptoms are largely ameliorated. (AR 27-28, 317, 336-37, 403, 405, 407, 409, 422, 423, 427, 446-47, 450). A good response to treatment supports an adverse credibility finding. See Tommasetti, 533 F.3d at 1040 ("The record reflects that Tommasetti responded favorably to conservative treatment including . . . the use of anti-inflammatory medication [and] a transcutaneous electrical nerve stimulation unit . . . . Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); Crane, 76 F.3d at 254 ("evidence suggesting that [the claimant] responded well to treatment" supports an adverse credibility finding).

Plaintiff argues that her treatment was not conservative because "[p]sychotropic medications, such as those prescribed [for her], are not given lightly, as they may cause serious side-effects, including tardive dyskinesia, . . . [which] is a 'debilitating' movement disorder that is 'frequently irreversible' . . . ." (Dkt. No. 16 at 17-18). However, there is no evidence in the medical record that Plaintiff has tardive dyskinesia. Indeed, Plaintiff's mental impairments have been stabilized with no reported side effects from her medications. (AR 27-28, 403, 405, 407, 409, 411, 423).

Finally, the ALJ noted "the significant gaps in [Plaintiff's] treatment history, which are not necessarily consistent with allegations of disabling impairment." (AR 28). Indeed, after her alleged onset date in May 2012, when she was treated in the emergency room for abdominal pain, nausea, and vomiting resulting from stress and anxiety, Plaintiff did not seek any treatment until almost two years later, in March 2014. (AR 27, 301, 335-37). An ALJ may find a claimant's statements less credible when treatment is inconsistent with the level of complaints. See Molina, 674 F.3d at 1114.

Plaintiff suggests that the "most likely explanation" for the gap in her treatment is because her "severe anxiety . . . interferes with her ability to leave her home." (Dkt. No. 16 at 16). However, Plaintiff explicitly denied any problems driving, shopping, or being out in public. (AR 55, 192). Further, after Plaintiff began treating with Orange County Behavioral Services in

33

April 2014, she made regular monthly visits without any apparent issues from being out in public. (AR 394-441, 461-72). Plaintiff also argues that a person with mental illnesses may not be aware that she has a disorder requiring treatment. (Dkt. No. 16 at 16-17). However, Plaintiff began seeing a psychiatrist at age twenty for treatment of her anxiety. (AR 433).

Furthermore, the ALJ did not completely reject Plaintiff's subjective statements. Indeed, partially due to Plaintiff's credible statements, the ALJ found that the State agency psychologists' assessments were not restrictive enough. (AR 28). In light of Plaintiff's longitudinal history of anxiety and depression, and her credible difficulties with concentration and mood control, with secondary physical effects (AR 26-28), the ALJ limited her to simple, routine, and repetitive tasks that have no more than occasional interactions with coworkers, supervisors and the general public (AR 26). While this RFC precluded Plaintiff from performing her past relevant work, the ALJ found that she was capable of performing work that is less demanding. (AR 28-30).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

## C.   The RFC Is Consistent With The Medical Record

The ALJ found, at step three, that Plaintiff has moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  (AR 26).  The hypothetical at the hearing relied on by the ALJ limited Plaintiff to simple, routine, and repetitive tasks with the ability to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence, and no more than occasional interaction with coworkers, supervisors, and the general public. Plaintiff contends that "the restriction to simple, routine, and repetitive tasks says nothing about [her] ability to concentrate over a period of time, persist at tasks, or maintain a particular work pace over the course of a workday or workweek." (Dkt. No. 16 at 18).  Thus, Plaintiff argues that the RFC "fails to accurately describe moderate limitations in concentration, persistence, or pace in a work environment." (Id.).  After careful consideration, the Court disagrees.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545).  An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting."  20 C.F.R. § 404.1545(a)(1).  In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional

capacity assessments made by consultative examiners, State Agency physicians and medical experts. 20 C.F.R. § 404.1545(a)(3); see also id. § 404.1513(c). Further, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see 20 C.F.R. §§ 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity."), 416.946(c) (same).

Consistent with Plaintiff's treating physicians' diagnoses, the ALJ found that Plaintiff's anxiety and major depressive disorder are severe impairments. (AR 25, 403, 409, 411, 423, 424, 428). At step three, the ALJ conducted the psychiatric review technique, as described in 20 C.F.R. §§ 404.1520a and 416.920a, and found that Plaintiff has moderate limitations with regard to concentration, persistence, or pace. (AR 26). This finding is supported by Plaintiff's credible statements, Dr. Ngo's opinion, and the State agency psychologists' assessments.[4] (AR 28, 52 70-73, 83-85, 194, 476). In addition, because evidence received at the hearing level supported a finding of greater functional restrictions than those assessed by the State agency psychologists, the ALJ found that Plaintiff also has moderate limitations in maintaining social functioning, which is supported by Plaintiff's

---

[4] As noted above, the ALJ found Plaintiff partially credible and rejected only Dr. Ngo's extreme functional limitations.

credible testimony, the medical records, and Dr. Ngo's opinion.[5] (AR 26, 28, 476).

However, the limitations identified in step three are not an RFC assessment. SSR 96-8p, at *4. Instead, "[t]he mental RFC assessment . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found [in the psychiatric review technique]" at step three. Id. Further, the mental RFC assessment "must be expressed in terms of work-related functions." Id. at *6. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *7. Finally, while the ALJ must consider and evaluate any RFC assessments by State agency consultants or consultative examiners, the ALJ is solely responsible for making the RFC assessment. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-6p, at *4; SSR 96-5p, at *2. Dr. Ngo's opinion did not include such a narrative discussion expressed in terms of work-related functions.

As required by the SSR, the ALJ engaged in a more detailed assessment of Plaintiff's functional limitations when determining Plaintiff's RFC than when making his step-three finding. The ALJ

---

[5] Plaintiff acknowledges that the moderate limitation in social functioning is adequately addressed by the RFC's limitation to only occasional interaction with coworkers, supervisors, and the general public. (Dkt. No. 16 at 18).

gave some weight to the State agency psychologists' assessments, who found that despite Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace, she "can learn and remember basic work instructions and tasks of 1-2 steps[,] . . . follow a schedule, make decisions and complete basic work tasks on a consistent basis[, and] . . . adapt to changes and handle the normal stressors of full time employment." (AR 28, 73, 85). This finding is consistent with mental status examinations, which indicted some moderate deficiencies but were otherwise unremarkable, as discussed above. When Plaintiff has been compliant with her medications, her symptoms have largely been ameliorated. In January 2015, for example, while her affect was restricted and dysphoric and her insight and judgment fair, Plaintiff's appearance, speech, mood, thought process, concentration, and orientation were all normal. (AR 403). Thus, in converting Plaintiff's moderate limitations in concentration, persistence, or pace to an RFC assessment consistent with the medical evidence, the ALJ limiting her to the performance of simple, routine, and repetitive tasks, but with the ability to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence. (AR 26); see also Withrow v. Colvin, 672 F. App'x 748, 749 (9th Cir. 2017) ("claimants with moderate mental limitations are capable of doing simple unskilled work").

The ALJ's RFC assessment is supported by the State agency psychologists' opinions. "State agency medical and psychological consultants are highly qualified physicians and psychologists who

are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, at *2. At the initial and reconsideration levels of the administrative review process, they make findings of fact on the medical issues, including the claimant's RFC. Id. Their findings of fact become opinions that the ALJ must consider and evaluate when making a decision in a particular case. Id.

Here, Dr. Campbell, the State agency consultants, found that Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 73). However, Dr. Campbell found that Plaintiff is not significantly limited in her ability to carry out very short and simple or detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; or make simple work-related decisions. (AR 73). Dr. Campbell also found that Plaintiff has no social interaction or adaption limitations. (AR 73). Dr. Campbell concluded that Plaintiff can learn and remember basic work instructions and tasks of 1-2 steps, follow a schedule, make decisions and complete basic work tasks on a consistent basis, and adapt to changes and handle the normal stressors of full time employment." (AR 73). On reconsideration,

Dr. Moura, another State agency consultant, concurred with Dr. Campbell's assessment. (AR 83-85).

The State agency consultants' conclusion that Plaintiff is capable of simple tasks of one-to-two steps, with the ability to make decisions, complete tasks and adapt to changes and normal stressors in the workplace is encompassed in the ALJ's RFC assessment of simple, routine, and repetitive tasks, with the ability to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (the ALJ's finding of moderate mental limitations was consistent with an RFC for simple, routine, and repetitive work). However, because the medical records submitted at the hearing level, including Plaintiff's credible testimony, indicated that Plaintiff has moderate limitations in social functioning, the ALJ rejected the State agency psychologists' finding that Plaintiff has no social interaction limitations and limited Plaintiff to no more than occasional contact with coworkers, supervisors, and the general public. (AR 26).

Plaintiff nevertheless contends that "the mental restrictions presented in the accepted hypothetical say nothing about [Plaintiff's] ability to concentrate, persist, or maintain a particular pace over the course of a workday or workweek." (Dkt. No. 16 at 19) (citing Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211, 212 (9th Cir. 2009) (finding that "the ALJ's initial hypothetical question to the vocational expert referenc[ing] only

'simple, repetitive work,' without including limitations on concentration, persistence or pace . . . was error") and Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert.")). However, Brink and Lubin are unpublished cases and therefore do not control the outcome here. See 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent . . . ."). Further, an earlier published Ninth Circuit decision has arguably held otherwise. See Stubbs-Danielson, 539 F.3d at 1174 (finding that RFC limiting a claimant to simple, repetitive work "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony"); accord Miller v. Colvin, No. CV 15-7388, 2016 WL 4059636, at *2 (C.D. Cal. July 28, 2016) ("ALJ may translate moderate limitations into a limitation to simple repetitive tasks based on record"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch, 400 F.3d at 679. As the Court cannot conclude that the ALJ's interpretation of the State agency consultants' assessments was irrational, the ALJ's decision must be upheld.

Even if the Ninth Circuit precedent were to require that limitations in concentration, persistence, or pace be explicitly included in the hypothetical question to the VE, the error here

would be harmless.  See Buck, 869 F.3d at 1048 ("The Court may not reverse an ALJ's decision on account of a harmless error.").  The ALJ acknowledged that Plaintiff has moderate restrictions in concentration, persistence, or pace.  (AR 26).  However, the ALJ's hypothetical question restricted Plaintiff only to "simple, routine, and repetitive tasks."  (AR 32).  Nevertheless, the jobs identified by the VE were limited to those requiring only Level 2 reasoning.  (AR 30) (identifying cleaner, DOT 919.687-014, packer, DOT 920.587-018, and laundry worker, DOT 361.685-018, as jobs that exist in sufficient numbers in the national economy that someone with Plaintiff's RFC could perform); see <http://www.govtusa.com/dot> (jobs classified with DOT numbers 919.687-014, 920.587-018, and 361-685-018 involve Level 2 reasoning) (last visited August 1, 2018).  Jobs with Level 2 reasoning adequately encompass moderate difficulties in concentration, persistence, or pace, such as Plaintiff's.  Turner v. Berryhill, 705 F. App'x 495, 498-99 (9th Cir. 2017) ("The RFC determination limiting Turner to 'simple, repetitive tasks,' which adequately encompasses Turner's moderate difficulties in concentration, persistence, or pace, is compatible with jobs requiring Level 2 reasoning."); cf. Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (finding "an inherent inconsistency between [the claimant's] limitation to simple, routine tasks, and the requirements of Level 3 Reasoning").

In sum, the ALJ has the sole authority to review medical and other record evidence and translate the evidence into work related functions.  20 C.F.R. §§ 404.1527(d)(2) ("your residual functional

capacity" is an issue "reserved to the Commissioner"), 416.927(d)(2) (same). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." <u>Burch</u>, 400 F.3d at 679. As the Court cannot conclude that the ALJ's RFC determination was irrational, the ALJ's decision must be upheld. As discussed above, the ALJ properly found that Plaintiff has the ability to perform simple, routine, and repetitive tasks. See <u>Stubbs-Danielson</u>, 539 F.3d at 1174-76 (ALJ is responsible for translating claimant's impairments into work-related functions and determining RFC); <u>see also</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citation omitted). Thus, because the ALJ's RFC assessment is supported by substantial evidence, no remand is required.

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 2, 2018

_____
/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**